IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIDWEST OPERATING ENGINEERS WELFARE FUND, MIDWEST OPERATING ENGINEERS PENSION FUND, OPERATING ENGINEERS LOCAL 150 APPRENTICESHIP FUND, MIDWEST OPERATING ENGINEERS RETIREMENT ENHANCEMENT FUND, CONSTRUCTION INDUSTRY RESEARCH AND SERVICE TRUST FUND, and INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>J & L EXCAVATING, INC.,<br><br>　　　　　Defendant. | No. 19 C 3636<br><br>Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

For the reasons explained below, plaintiffs' motion for summary judgment is denied, and defendant's motion for summary judgment is granted.

## BACKGROUND

This is an action in which plaintiffs—several employee-benefit funds (the "Funds") and a union—seek to collect allegedly delinquent fringe-benefit contributions and to compel an audit. Plaintiffs also sought to enforce two awards of a Joint Grievance Committee, but the Court dismissed those claims with prejudice as time-barred.

Plaintiffs' remaining claims are Count III, a claim under the Employee Retirement Income Security Act ("ERISA") for recovery of unpaid fund contributions; Count V, a claim under the Labor Management Relations Act ("LMRA") for recovery of unpaid contributions to the Construction Industry Research and Service Trust Fund ("Construction Industry Fund"); Count VI, to compel an audit of defendant under ERISA; and Count VII, to compel an audit of defendant under the LMRA. (The complaint contains no Count IV.) It is undisputed that the audits at issue in Counts VI and VII have already been completed (ECF No. 44, Pls.' Resp. Def.'s L.R. 56.1 Stmt. ¶ 2), so those claims are dismissed as moot, and only Counts III and V are now at issue. The parties have filed cross-motions for summary judgment.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Davis v. Kayira*, 938 F.3d 910, 914 (7th Cir. 2019). On cross-motions for summary judgment, the Court construes all inferences in favor of the party against whom the motion under consideration is made. W*estfield Ins. Co. v. Nat'l Decorating Serv., Inc.*, 863 F.3d 690, 695 (7th Cir. 2017).

## UNDISPUTED MATERIAL FACTS

On June 3, 2004, an entity named J & L Excavating, Inc. was incorporated under the laws of Illinois. On October 1, 2004, Jeffrey Laczynski, the corporation's president and sole owner, signed a Memorandum of Agreement ("MOA") with plaintiff International Union of Operating Engineers, Local 150 (the "Union") that bound J & L Excavating, Inc. and the company's "successors and assigns" to the Excavators, Inc. Heavy & Highway & Underground Agreement (the "Master Agreement") and the governing Plan agreements listed therein. The MOA stated:

> The Parties do hereby adopt the Master Agreement dated June 1, 2001 entered into by and between the Union and the Excavators, Inc. (Heavy & Highway & Underground) and the parties do hereby mutually agree to be bound by the terms and conditions of that Master Agreement and the Agreement and Declaration of Trust of the Midwest Operating Engineers Pension Plan, Midwest Operating Engineers Welfare Plan, Local 150 I.U.O.E. Vacation Savings Plan and the Local 150 Apprenticeship Fund, and all amendments heretofore or hereafter made thereto, as though the same were fully incorporated herein.

(ECF No. 44-2 at 2.) The MOA further stated:

> This Agreement and the adoption of the Master Agreement and the Agreements and Declarations of Trust referred to . . . above, shall be effective as of October 1, 2004 and remain in effect to and including the expiration date of the Master Agreement adopted herein. This Agreement shall continue in effect from year to year thereafter and specifically adopt any Master Agreement entered into between the Union and Excavators, Inc. (Heavy & Highway & Underground) subsequent to the expiration date of the Master Agreement herein adopted unless notice of termination or amendment is given in the manner provided herein.
>
> Either party desiring to amend or terminate this Memorandum of Agreement must notify the other in writing at least three (3) calendar months prior to the expiration of the Master Agreement adopted herein.

(*Id.*) The expiration date of the Master Agreement adopted by the MOA was May 31, 2007. (ECF No. 38-17 at 2.) The work covered by the MOA generally included excavation, grading,

piping, sewer, and drainage work involving the operation of equipment such as skid steers and excavators.

On June 13, 2006, plaintiffs received a letter from Laczynski on J & L Excavating's letterhead, stating as follows:

Attn: M.O.E. Fringe benefits

To whom it may concern . . .

As per phone conversations with local 150 offices on 6/9/06, this letter is to inform you that as of 6/14/06 J&L Excavating Inc. will no longer be effective or conducting business.

As for myself, Jeff Laczynski, . . . I will be switching my status with the local 150 from "OWNER/OPERATOR" status to just a normal card holding "OPERATOR."

Thank you, your time is greatly appreciated!

Sincerely,
Jeff Laczynski

(ECF No. 38-22.) On June 19, 2006, the Union's Legal Department sent Laczynski a letter acknowledging receipt of his letter and stating: "I hope that the Company's decision to cease operations is the result of sound business judgment and not misfortune or adversity. Nevertheless, should J & L Excavating, or any of its principals, successors, or assigns perform any work within the scope of the [Master Agreement], Local 150 will honor its obligations under [the Master Agreement] and expects the Company to do the same." (ECF No. 38-16.) According to Michael Kresge, the Union and Construction Industry Fund's Rule 30(b)(6) witness, the Union understood Laczynski's letter to mean that J & L Excavating, Inc. was terminating its agreement with the Union. (ECF No. 38-10, Dep. of Michael R. Kresge at 102-03.) Thomas Bernstein, the Funds' Rule 30(b)(6) witness, testified at his deposition that the Funds "turned off the billing" for contributions for J & L Excavating, Inc. in response to the letter. (ECF No. 38-9, Dep. of Thomas Michael Bernstein at 87-88.)

On October 13, 2006, J & L Excavating, Inc., to which the Court will hereinafter refer as the "Prior Entity," was voluntarily dissolved. (ECF No. 38-12.) After the closure of the Prior Entity, Laczynski worked as a non-management employee of other companies that did excavating work.

On May 7, 2010, Laczynski incorporated another entity named J & L Excavating, Inc. ("J & L" or "defendant") in Illinois. (ECF No. 38-11.) Laczynski is the president and sole owner of J & L, which performs the same type of work as the Prior Entity but has not executed any Memorandum of Agreement or any other contract with any of the plaintiffs. It is undisputed that

3

Laczynski did not own or manage any business that performed covered bargaining-unit work between June 14, 2006 and May 1, 2010.

Plaintiffs say that the Union "discovered" in September 2012 that "J&L Excavating, Inc. had reincorporated and was performing bargaining unit work" under the Master Agreement. (ECF No. 43, Pls.' Mem. Supp. Mot. Summ. J. at 3.) The Union then notified defendant of its position that defendant was performing bargaining-unit work in violation of the Master Agreement. Defendant responded by a letter stating that "since its incorporation in 2010, J&L has never been signatory to the [Master Agreement]," and, "[t]o the extent that there is any doubt that J&L is or ever has been signatory, please consider this letter notice of J&L's repudiation of the above-referenced collective bargaining agreement." (ECF No. 38-23 at 1-2.) In October 2012, pursuant to a dispute-resolution procedure set forth in the Master Agreement, the Union filed two grievances against defendant, which were heard by a Joint Grievance Committee ("JGC"). J & L did not participate in the grievance procedure. In December 2012, the JGC issued a $7,273.50 award against defendant and in favor of the Union on one grievance and a $6,952.06 award against defendant and in favor of the Union on the other grievance. (ECF No. 44-4, Tabs 6-7.)[1] The JGC's decisions state simply: "Based on the testimony heard, the Committee by majority decision determined" that "[t]he Employer shall pay to the [Union] Assistance Fund" the sums awarded. (*Id.*) J & L, evidently, did not pay those sums.

## DISCUSSION

Plaintiffs contend that they are entitled to summary judgment because defendant is contractually liable for contributions under the Prior Entity's 2004 MOA, for two reasons. The first, say plaintiffs, is that the JGC "found that defendant is bound to" the Master Agreement. (Pls.' Mem. Supp. Mot. Summ. J. at 4.) This Court, however, held in its previous order that plaintiffs cannot obtain judicial enforcement of the JGC awards because they waited too long to file suit.

Furthermore, the proposition that the JGC found that defendant is bound by the Master Agreement, made findings about the relationship between defendant and plaintiffs or its duration, or indeed made any findings at all, is without merit. An instructive decision is *Calumet River Fleeting, Inc. v. International Union of Operating Engineers, Local 150*, 824 F.3d 645 (7th Cir. 2016). There, the Union presented a similar argument concerning the effect of a previous arbitration decision. The Court set out the background facts:

---

[1] Defendant argues that the Court should not consider the JGC awards because they are "unauthenticated and hearsay." (ECF No. 45, Def.'s Resp. Pls.' L.R. 56.1 Stmt. ¶¶ 10-11.). Defendant's objections are overruled. "In granting summary judgment, a district court may consider any evidence that would be admissible at trial." *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 420 (7th Cir. 2016). "The evidence need not be admissible in form, but must be admissible in content, such that, for instance, affidavits may be considered if the substitution of oral testimony for the affidavit statements would make the evidence admissible at trial." *Id.* The JGC awards could be admissible under the business-records exception, Fed. R. Evid. 803(6), and plaintiffs could provide the foundation for their admission at trial.

> Calumet River Fleeting, Inc. fired a boat operator, and defendant International Union of Operating Engineers, Local 150, AFL-CIO ("the Union") filed a grievance with Calumet over the termination. Calumet refused to participate in the arbitration, saying that although it was once a party to a collective bargaining agreement with the Union, Calumet had terminated its participation in that agreement before the dispute arose over the firing. When the Union took steps to start the arbitration, Calumet filed this suit to stop it. The Union counterclaimed for an order compelling arbitration. The district court granted summary judgment to Calumet, holding that it was no longer a party to any agreement with the Union that might have required arbitration.
>
> The Union has appealed, arguing that an earlier arbitration award in an unrelated proceeding had found that Calumet was an alter ego of Selvick Marine Construction, LLC, a company that was a party to the collective bargaining agreement. By virtue of the alter ego relationship, the Union contends that Calumet had to submit to arbitration.

824 F.3d at 647. The Court of Appeals affirmed, reasoning as follows:

> The Union made a strategic decision to rely entirely on the award's alter ego finding as a basis to compel arbitration, but the award simply does not serve that function. It provided no prospective relief and had no prospective effect. It did not establish that Calumet was a party to the [collective bargaining agreement] when it fired [the boat operator]. It did not establish that Calumet was then the alter ego of Selvick Marine, which had dissolved sometime in 2011 or 2012.

*Id.* at 652. In the instant case, the JGC's awards contain no findings whatsoever, let alone an alter-ego or successorship finding. Without explanation, the JGC simply ordered defendant to pay the Union certain sums, and small sums at that. Plaintiffs do not explain why the unenforceable awards compel a holding that defendant is bound by the MOA and Master Agreement for purposes of the contribution amounts sought in this action, nor do plaintiffs cite any authority in support of their argument. Plaintiffs do point out that defendant never challenged the validity of the JGC awards, but they fail to develop this argument or substantively address the Court's finding that the statute of limitations bars any reliance on the awards. Because the awards are unenforceable and plaintiffs have not otherwise sought to establish that defendant is bound by the MOA or Master Agreement, the Court rejects plaintiffs' first argument.

Plaintiffs' second argument is that the Prior Entity's[2] obligations under the MOA and Master Agreement can be imposed on defendant under the successorship doctrine. Successor

---

[2] Plaintiffs reject defendant's use of the term "Prior Entity," but they do not develop any argument that it is inaccurate. Plaintiffs do not dispute that Laczynski dissolved the first corporation and that four years later, he incorporated a new entity with the same name. While plaintiffs refer to the second corporation's creation as a "reincorporation," they present no argument that it is an alter ego of the first.

5

liability may be imposed in actions seeking recovery of unpaid employee benefit plan contributions. *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1329 (7th Cir. 1990). Plaintiffs rely on the MOA's "evergreen clause," quoted above, which bound the Prior Entity and its successors to all subsequent Master Agreements unless the Prior Entity provided written notice of termination of the MOA at least three months prior to the expiration of the Master Agreement. But defendant points to the June 13, 2006 letter from Laczynski to the Union and contends that it was a written notice of termination of the MOA such that the MOA terminated no later than May 31, 2007 (the expiration date of the original Master Agreement to which the Prior Entity was bound), and thus there is no operative agreement to which defendant could be a successor.[3]

Plaintiffs assert that Laczynski's letter was not effective to terminate the MOA because Laczynski "did not state that J&L Excavating, Inc. was permanently closing," nor did he expressly state that the company was terminating the MOA or any other agreement. (Pls.' Mem. Supp. Mot. Summ. J. at 12.) The Court is not persuaded. Although Laczynski did not use the word "terminate" or explicitly refer to the MOA, the only reasonable reading of the letter is that Laczynski was conveying his intent to terminate that agreement. Otherwise, he would not have referred to "M.O.E. Fringe benefits." There is also no indication in the letter that Laczynski intended for the closure of the Prior Entity to be anything but permanent; he unequivocally stated that his company would "no longer be effective or conducting business." (ECF No. 38-22.) And indeed, he dissolved the corporation. Plaintiffs' contention that Laczynski had no intent to "permanently close" the Prior Entity is based on sheer speculation; they cite no evidence other than the fact that he incorporated a second company four years later. A four-year gap (without any evidence of covered work performed during that time) is not, as plaintiffs argue, a "short hiatus." (Pls.' Mem. Supp. Mot. Summ. J. at 7. ) Plaintiffs' argument is also belied by (1) the admission of Michael Kresge, the Union's Rule 30(b)(6) witness, that the Union understood the letter to be a termination of the agreement,[4] and (2) the fact that the Funds stopped billing the Prior Entity for contributions. The parties conducted themselves as if the agreement had been terminated. Because the Court finds that there is no genuine issue that the June 2006 letter was effective to terminate the MOA, plaintiffs cannot rely on the continuation of the MOA past May 2007, and thus cannot rely on the successorship doctrine for the imposition of liability on defendant.

---

[3] Defendant also contends that under the "one-man-unit" rule, the MOA terminated on June 13, 2006, or alternatively that the dissolution of the Prior Entity terminated the MOA, but in light of the Court's conclusion, those contentions need not be discussed.

[4] Plaintiffs argue that Kresge's testimony was based on a "misstatement" of Laczynski's letter, and that Kresge "corrected his testimony later in the deposition." (ECF No. 51, Pls.' Reply at 3.) The Court disagrees. Kresge was asked about the Union's understanding of what the Prior Entity communicated to the Union in 2006. He did not "correct" this testimony later in the deposition; he was not asked later in the deposition about the Union's understanding in 2006.

The JGC awards and the successorship doctrine are the sole bases for plaintiffs' summary judgment motion. The Court concludes that defendant cannot be liable for fund contributions under either theory; consequently, defendant is entitled to summary judgment in its favor.

## CONCLUSION

Plaintiffs' motion for summary judgment [42] is denied. Defendant's motion for summary judgment [36] is granted. Final judgment will be entered in favor of defendant and against plaintiffs. Civil case terminated.

**DATE:** June 25, 2020

*Ronald A. Guzmán*
**Hon. Ronald A. Guzmán**
**United States District Judge**